IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,     ) | CR 13-0175-TUC-CKJ (LAB) |
| Plaintiff,     ) | **REPORT AND RECOMMENDATION** |
| vs.     ) | |
| Jesus Ruben Nevarez,     ) | |
| Defendant.     ) | |

The District Court referred this case to the Magistrate Judge for a hearing on the defendant's motion to suppress statements. (Docs. 37, 45)  The defendant, Jesus Ruben Nevarez, argues that his post-arrest statements must be suppressed because they were coerced and involuntary, in violation of his Due Process rights.

An evidentiary hearing was held on September 3, 2013. In closing remarks, the defense raised a *Miranda* issue, arguing that the defendant's initial custodial statements to Supervisory Customs and Border Protection (SCBP) Officer Francisco Hernandez were given without *Miranda* warnings and the statements given to Customs and Border Protection (CBP) Officer Thomas Vader *post-Miranda* were given without a voluntary waiver. CBP Officer Gilbert Guerra  testified by video-teleconference. CBP Officers Marco Estrada, Francisco Hernandez and Thomas Vader testified, as did Defendant Jesus Ruben Nevarez. Exhibits 1 through 8 were admitted into evidence for purposes of the motion hearing only.

**Charge:**

The defendant is charged by indictment in Count 1 with conspiracy to transport an illegal

1  alien for profit, in violation of Title 8 United States Code §§ 1324(a)(1)(A)(ii),
2  1324(a)(1)(A)(v)(I), and 1324(a)(1)(B)(i); in Count 2 with attempting to bring in an
3  undocumented juvenile for profit, in violation of Title 8 §§ 1324(a)(2) and 1324 (a)(2)(B)(ii);
4  and in Count 3 with unlawfully using a U.S. passport of a juvenile person in the commission
5  of a felony, in violation of Title 8 United States Code §§ 1321 et seq and Title 18 United
6  States Code §§ 1028A(a), 1028A(b)(2) and 1028A(c)(10). (Doc. 5).

**Motion to Suppress:**

The defendant, Jesus Ruben Nevarez, argues his Due Process rights were violated because during a custodial interrogation he was administered *Miranda* warnings that he did not understand. He states that he gave a statement only after being threatened and intimidated by an angry U.S. Customs Officer. He claims that he is young, immature, inexperienced in the justice system and therefore his statements were involuntary and must be suppressed.

The Court concludes the statements were voluntary and the statements made to CBP Officer Thomas Vader were given after proper *Miranda* warnings and a voluntary waiver. They are admissible at trial. The statements made to SCBP Officer Francisco Hernandez were custodial and given without *Miranda* warnings, in violation of the defendant's Fifth Amendment rights, and are inadmissable in the government's case-in-chief. The Court finds, however, that the statements were voluntary and may be used to impeach the defendant if he testifies.

**EVIDENCE:**

*Gilbert Guerra*

Gilbert Guerra is a U.S. CBP Officer who has been stationed at the Nogales, AZ port of entry (POE) for the five years he has been an officer. On 1/10/13 he was working the 6:00 am to 2:00 pm shift. Guerra was contacted by officers who stated they had an alien smuggling case. Guerra does not remember who brought the defendant to him but when he met the defendant he asked if the defendant preferred to communicate in English or Spanish. The defendant chose Spanish.

At approximately 11:40 am, Guerra read the defendant his rights from the I-214 form. (Ex.

7) Guerra read the document word for word and then handed the rights form to the defendant to read for himself. Guerra asked the defendant if he understood his rights and was willing to answer questions. The defendant said he understood and signed the form. He signed approximately 15 minutes after he was brought to Guerra. The defendant was calm, was not in handcuffs, was shackled at the ankles, and made eye contact with Guerra. The defendant was sitting at a desk in the Passport Control Unit (PCU), which has 3 holding cells, 8 computers in a row, 12 seats, and bathrooms for the use of defendants being processed. (Ex. 4, 5, 6) The defendant appeared to have no physical or mental disabilities. He did not appear intoxicated.

The reading of the rights was not recorded. It never is, which is why there is always a witness. Guerra speaks Spanish every day, but he may have had trouble reading a couple of words on the rights form. After the defendant signed the form, Guerra placed the defendant in a holding cell to wait for another officer to process him.

### *Marco Estrada*

Marco Estrada is a U.S. CBP Officer who has worked at the POE for 24 years. Currently he is an enforcement officer at the Morley Gate, which is for pedestrians only. On 1/10/13 Estrada may have transported the defendant to the U.S. Marshals. He took no statements from the defendant. He testified before the Grand Jury. Exhibits 1 through 6 were taken by Officer Guerra at Estrada's direction. Estrada described the physical layout of secondary inspection and the PCU. The PCU has four holding cells which all have a bench, cots, snacks, water, blankets, and temperature control. The POE has video surveillance but the video is taped over after 30 days unless there is a request to preserve it. There is no audio recording.

### *Francisco Hernandez*

Francisco Hernandez has been a U.S. CBP Officer for 20 years and is currently on duty at the Nogales, AZ POE. On 1/10/13 he was working the 6:00 am to 2:00 pm shift. At about 10:30 am one of the agents from the Morley POE asked for a supervisor to assist with an alien smuggling case that involved a minor male child. When Hernandez came into contact

1  with the defendant he spoke to the defendant in Spanish. Hernandez is a native Spanish
2  speaker.

3  The defendant was handcuffed. Hernandez did not read him his rights. Hernandez asked
4  the defendant if he knew that what he did was illegal. The defendant answered that he did.
5  Hernandez asked how much the defendant was going to be paid. The defendant answered
6  that he did not know. He would find out when he got there, but he hoped it would be a lot.
7  Hernandez did not tell the defendant that he was going to prison for five years. Hernandez
8  is not familiar with the penalties for alien smuggling.

9  The conversation took place while the defendant was in custody in a small room at the
10 Morley POE. Officer Correa was present. Hernandez was not present during any other
11 questioning. He did not overhear any other statements the defendant may have made. It is
12 not standard procedure to record interrogations.

13 ***Thomas Vader***

14 Thomas Vader has been a U.S. CBP Officer for over 10 years. He has worked in the PCU
15 at the DeConcini POE for five years and has processed over 1,000 cases of border crimes.
16 Vader processed the defendant's case. The defendant was in the holding area. He was
17 shackled and had access to food, water, and a bathroom. Vader spoke to the defendant in
18 Spanish because the defendant said he preferred Spanish. Vader speaks Spanish because he
19 has lived his entire life in Nogales, AZ.

20 Vader initially showed the defendant the I-214 (Ex. 7) and asked if he had received his
21 *Miranda* warnings. The defendant said he had and that he would speak with Vader. The
22 interrogation was not recorded. Vader has never used a tape recorder to memorialize a
23 statement. The defendant's demeanor was nonchalant. Vader asked if he had any medical
24 conditions which the defendant answered he did not. The defendant was coherent.

25 The defendant said that the child who accompanied him across the border was his cousin.
26 Vadar did not believe him and said it would be better for the defendant when he got in front
27 of the judge if he had told the truth. Vader did not yell, was not angry, and was not sarcastic.
28 He did not threaten the defendant with jail. He made no promises. He did not lie to, trick or

1  touch the defendant.  After about 10 minutes the defendant confessed.  Vader then began
2  typing the sworn statement, which does not include the initial statements that Vader thought
3  were false.  (Ex. 8) When the statement was finished he told the defendant that these were
4  the questions and answers from the interrogation.  He provided the five pages in English to
5  the defendant to review and asked him to initial each page and sign the sixth page.

6  The interrogation lasted about 40 minutes.  It was witnessed by Officer Eira Rivera.  The
7  defendant did not ask for food, water, or a break.  The defendant had a chance to but did not
8  ask questions.  Vader updated his supervisor midway through the questioning. He did not
9  speak with the child who was smuggled or the child's mother.

### ***Jesus Ruben Nevarez***

11  Jesus Nevarez was 19 years old on 1/10/13.  He is a United States citizen who has never
12  been arrested before.  He attended high school and is now in an engineering program.  He
13  reads and writes Spanish and reads and writes a little English.  Currently he is 20 years old
14  and works for an architect helping with plans, paint, landscaping, and block work.  At the
15  time of his arrest, Nevarez lived in Nogales, Sonora, Mexico with his mother, siblings, and
16  grandmother.  He and his mother both paid the bills and cooked. Nevarez had a driver's
17  license and owned an old car.  He previously had a checking account.  He worked packing
18  produce in Rio Rico, AZ.  He crossed the international border frequently.  Nevarez is in good
19  mental and physical health.  He takes no medication.

20  On 1/10/13 Nevarez approached the Morley POE at about 10:30 am. He had a child with
21  him. Nevarez presented his passport card.  He and the child were taken to the secondary
22  inspection area.  Nevarez was placed in a small room, handcuffed and questioned.  The child
23  was removed from the room.  Officer Hernandez arrived about five minutes later and asked
24  him if he knew that what he did was illegal.  Nevarez said he did know because an officer
25  had already explained to him that bringing the child across was illegal since the child had no
26  right to enter the United States. Hernandez told Nevarez that he was going to get five years
27  in prison and it could be worse if he didn't tell the truth.  Hernandez also said something
28  about a fine.

1  Nevarez was so scared that he was shaking and could not speak. Hernandez walked
2  Nevarez and the child to the second floor. He put a sweater over Nevarez's head so the
3  people crossing wouldn't see him. That made Nevarez feel ashamed and as if he was doing
4  something wrong. His personal property was taken and put in a locker. The handcuffs were
5  removed and leg shackles applied. Nevarez was offered food, water, and access to a
6  bathroom.

7  Officer Guerra read Nevarez his rights but was struggling to read in Spanish so Nevarez
8  asked to read the rights form himself. Guerra asked Nevarez if he had any questions and
9  asked if he understood his rights. Nevarez replied that he had no questions, understood his
10 rights, and was willing to speak to the officer. Guerra told him to sign the waiver of rights
11 form if he understood it. Nevarez signed because there was a place for his signature. Guerra
12 left and then came back and asked more questions. Nevarez was moved to a different cell
13 where he spoke to Officer Vader. Vader told him he was going to jail. Vader made a
14 telephone call to Nevarez's cousin, at Nevarez's request, so his cousin could retrieve his
15 belongings. Nevarez felt bad when his cousin was told that Nevarez had been arrested.
16 Nevarez cried.

17 Nevarez thought Vader was mad and sarcastic. Vader did not yell, but he raised his voice
18 a little and looked bothered. Vader did not threaten him or make any promises. Nevarez did
19 not ask for a break. He was not under the influence of drugs or alcohol. Nevarez only
20 confessed so Vader would stop asking him questions. The interrogation lasted almost an
21 hour. Vader did not have trouble understanding Nevarez's Spanish. Vader told the child's
22 mother that Nevarez did not care about the child and only crossed him for the money.

23 Vader handed Nevarez his sworn statement (Ex. 8) and told him to read it and sign.
24 Nevarez struggles to read English. He did not understand what the last page said, but he
25 signed it because he thought he had to. Nevarez testified that he never said the child was his
26 cousin and never told Vader he tried to smuggle the child. He confirmed all the other
27 information in the sworn statement.
28 **DISCUSSION**:

**Miranda**:

Statements that are made in response to questioning initiated by law enforcement officers while a person is in custody may not be used in the government's case-in-chief unless the person is first advised of his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). An incriminating statement obtained during a custodial interrogation is only admissible if there has been a knowing, intelligent, and voluntary waiver of *Miranda* rights. *Id*. The courts look at the totality of the circumstances to determine if a *Miranda* waiver is voluntary, knowing, and intelligent. *U.S. v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir. 2005) (citations omitted).

The waiver is voluntary if it is the result of free choice and not because of coercion or promises. *Id*. at 1128. In order to find a confession involuntary for purposes of the Due Process Clause, there must be coercive police activity. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). The waiver is knowing and intelligent if the defendant was fully aware of the nature of the right he was waiving and the consequences of his decision to abandon the right. *U.S. v. Rodriguez-Preciado, supra*. at 1127. The government has the burden to prove a valid waiver by a preponderance of the evidence in order to overcome the presumption against a waiver. *Colorado v. Connelly*, *supra*. at 168.

Hernandez - There is no dispute that the defendant was in custody when Hernandez questioned him without administering *Miranda* warnings. The defendant argued at the evidentiary hearing that his statements to Hernandez should be suppressed. He is correct. Defendant's statements to Hernandez are inadmissible in the government's case-in-chief. The statements were, however, given voluntarily because they were not the result of police overreaching. They are admissible for impeachment on cross-examination. *Oregon v. Elstad*, 470 U.S. 298, 307 (1985).

Vader - The defendant argued at the hearing that his statements to Vader should be suppressed because his *Miranda* waiver was not voluntary since the sworn statement (Ex. 8) was incomplete and in English. He argued in his motion that his *Miranda* waiver was not knowing and intelligent because he did not understand his rights.

1    The evidence does not support the defendant's arguments. The defendant testified that he
2 reads and understands Spanish. He was given the rights form in Spanish to read for himself.
3 He told Officer Guerra that he understood his rights, had no questions, and was willing to
4 speak with the officers. He signed the Spanish form, agreeing to waive his rights. (Ex. 7).
5 When Officer Vader began his interrogation, he showed the defendant the rights form and
6 asked the defendant if he was advised of his rights. The defendant said that he was and that
7 he would speak with the officer. There was no coercive police activity.

8    Based on the totality of the circumstances, the Court finds that the statements to Officer
9 Vader were made after proper *Miranda* warnings and a knowing, intelligent, and voluntary
10 waiver. They are admissible in evidence.

11 **Voluntariness**:

12    The defendant argues that his statements should be suppressed because they were
13 involuntary and the defendant's will was overborne, in violation of his Due Process rights.
14 The argument is based on the defendant's young age, lack of prior criminal history, lack of
15 life experience, fear after being told he was going to prison, and the circumstances of his
16 custody. While the defendant is young and was scared after being confronted and arrested
17 by the officers, the Court concludes that there is no evidence of any coercive police activity
18 that would cause the statements to be involuntary. A defendant's mental condition alone
19 does not render a confession involuntary without official coercion. *Colorado v. Connelly*,
20 479 U.S. at 164.

21    Based on the totality of the circumstances, the court finds that Nevarez's statements were
22 freely and voluntarily given. They were not extracted by threats, violence, or express or
23 implied promises sufficient to overbear his will or critically impair his capacity for self-
24 determination.

25 **RECOMMENDATION:**

26    In view of the foregoing, it is recommended that, after its independent review of the
27 record, the District Court **DENY** the motions to suppress statements. (Doc. 37, 45).

28    Defense counsel may serve and file written objections within 14 days. If objections are

1  not timely filed, the party's right to de novo review may be waived.  No reply to objections
2  shall be filed unless leave is granted from the District Court.
3      The Clerk of the Court is directed to send a copy of this Report and Recommendation to
4  all parties.
5      DATED this 13th day of September, 2013.

7  .

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge