IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                Plaintiff,<br><br>v.<br><br>Jesus Ruben Nevarez,<br><br>                Defendant. | No. CR-13-00175-TUC-CKJ<br><br>**ORDER** |

On September 13, 2013, Magistrate Judge Leslie A. Bowman issued a Report and Recommendation, (Doc. 56), in which she recommended denying Defendant's Motions to Suppress Statements. (Docs. 37, 45). On September 24, 2013, the government filed a Notice of No Objection to the Report and Recommendation. (Doc. 59). Defendant filed an Objection to the Report and Recommendation on September 27, 2013. (Doc. 63). On October 2, 2013, the government filed a response to Defendant's objections.

**I.      STANDARD OF REVIEW**

The Court reviews *de novo* the objected-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the un-objected to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.,* 170 F.3d 734, 739 (7th Cir. 1999); *See also Conley v. Crabtree,* 14 F.Supp.2d 1203, 1204 (D.Or.1998).

## II.     FACTUAL BACKGROUND

On September 3, 2013, Magistrate Judge Bowman conducted an evidentiary hearing. Customs and Border Protection Officers Gilbert Guerra, Marco Antonio Estrada Jr., Francisco Hernandez, and Thomas Vader testified for the government. The Defendant testified in his own defense.

According to the witness' testimony, on January 10, 2013, the Defendant and a child attempted to enter the United States through the Nogales, Arizona Port of Entry. At approximately 10:30 a.m., Officer Hernandez was informed that the Defendant had been detained on suspicion of attempting to smuggle the minor into the country. Officer Hernandez approached the Defendant and asked him in Spanish "do you know what you were doing was illegal." (Doc. 57 at p. 49). The Defendant responded in the affirmative. Officer Hernandez then asked the Defendant where he was planning on taking the child and how much he was going to get paid. The Defendant responded that he did not know how much he would be paid.[1] (Doc. 57 at p. 50). At this point, the Defendant had not been read *Miranda* warnings.

The Defendant confirmed that Officer Hernandez asked him these questions. However, the Defendant also alleged that Officer Hernandez told him that he would go to jail for five years as a result of his actions.[2] (Doc. 57 at p. 87-88). This conversation lasted approximately two minutes and after it was concluded, Officer Hernandez escorted the Defendant to the passport control unit. Officer Hernandez was not present for any subsequent interrogation of the Defendant. (Doc. 57 at p. 57).

At approximately 11:45 a.m., Officer Guerra met with the Defendant and read him *Miranda* warnings in Spanish for the first time. (Doc. 57 at p. 16). After he read the warnings, Officer Guerra permitted the Defendant to read the written Spanish warnings himself. (Doc. 57 at p. 18). The Defendant acknowledged that he understood his rights

---

[1] The Defendant disputes that he told Officer Hernandez that he was going to be paid to bring the child across the border.

[2] Officer Hernandez denied telling the Defendant he would spend five years in jail.

- 2 -

and was willing to answer questions. (Doc. 57 at p. 19). The Defendant then signed the *Miranda* warnings form. (Doc. 57 at p. 18). After confirming that the Defendant understood his *Miranda* warnings, Officer Guerra placed the Defendant into a holding cell and was not involved in any further interrogation of the Defendant. (Doc. 57 at p. 20).

At some point after the Defendant was read his *Miranda* warnings by Officer Guerra, Officer Vader interrogated the Defendant. (Doc. 57 at p. 61-62, 64). Prior to conducting the interview, Officer Vader confirmed that the Defendant had been read and understood his *Miranda* rights. (Doc. 57 at p. 64). Officer Vader then asked the Defendant if he wanted to answer questions to which the Defendant responded in the affirmative. (Doc. 57 at p. 64). During the interview, the Defendant was in shackles. However, he was not handcuffed. (Doc. 57 at p. 63). Initially, the Defendant denied any wrongdoing. However, after Officer Vader told the Defendant that it would be beneficial to him should he go before a Judge if he would just tell the truth, the Defendant changed his story and acknowledged that he had just picked the child up at a hotel and was supposed to deliver him to a shuttle for money. (Doc. 57 at p. 65-66). Officer Vader did not threaten or make any promises to the Defendant. He never told the Defendant he was going to jail, he did not raise his voice or become angry, the Defendant did not appear to have any physical or mental disabilities and was not under the influence of any drugs or alcohol at the time of the interrogation. (Doc. 57 at p. 66-67). The Defendant did not request any breaks during the interrogation which lasted approximately 40 minutes. (Doc. 57 at p. 68-70).

The Defendant testified and explained that on January 10, 2013, he was 19 years old and had never been arrested. (Doc. 57 at p. 84). As he was attempting to pass through the port of entry into the United States, he was taken to a small room where Officer Hernandez spoke with him. The Defendant was then brought to another area, his belongings were removed from him and he was placed in a holding cell. He acknowledged that after he spoke with Officer Hernandez, he was read his *Miranda* rights and he signed a form acknowledging that he understood his rights. (Doc. 57 at p.

- 3 -

114-120). Subsequently Officer Vader interviewed him. The Defendant contends that he was scared. However, he acknowledged that at the time of his arrest, he was in good physical and mental health, he was not taking any medications, he was never threatened or promised anything by the officers, and he was not under the influence of any drugs or alcohol at the time of the interrogation. (Doc. 57 at p. 113, 124).

## II.   ANALYSIS

*Defendant's Objections*

Defendant objects to the Magistrate Judge's finding that the Defendant's statements were voluntary and that the statements made to Customs and Border Protection (CBP) Officer Thomas Vader were given after proper *Miranda* warnings and a voluntary waiver.

*Voluntariness of Statements*

Statements must be voluntary to be admissible. *Lego v. Twomey*, 404 U.S. 477, 483-485 (1972). A statement is involuntary if it is coerced either by physical intimidation or psychological pressure. *United States v. Shi*, 525 F.3d 709, 730 (9th Cir. 2008). An involuntary or coerced statement is inadmissible at trial because its admission is a violation of the defendant's rights to due process. *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011). The burden is on the government to prove voluntariness of a confession by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

Voluntariness is determined by considering the totality of the circumstances, including "close scrutiny of the facts" to determine whether "a defendant's will was overborne by the circumstances surrounding the giving of the confession." *United States v. Wright*, 625 F.3d 583, 603 (9th Cir. 2010) (citations omitted). "[A] statement may be considered involuntary if it is extracted by any sorts of threats or violence, or obtained by any direct or implied promises, however slight, or by the exertion of any improper influence." *Beaty v. Schriro*, 509 F.3d 994, 999 (9th Cir. 2007) quoting *Hutto v. Ross*,

429 U.S. 28, 30 (1976)(internal quotations omitted).

"[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). "Coercive police activity can be the result of either physical intimidation or psychological pressure." *United States v. Preston*, 706 F.3d 1106, 1114 (9th Cir. 2013) quoting *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011). In determining the voluntariness of a confession, factors to consider include "the degree of police coercion; the length, location and continuity of the interrogation; and the defendant's maturity, education, physical condition, mental health, and age." *United States v. Preston*, 706 F.3d 1106, 1114 (9th Cir. 2013) quoting *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011) citing *Withrow v. Williams*, 507 U.S. 680, 693-694 (1993).

Defendant argues that based on the totality of the circumstances, his will was overborne and his statement were not voluntary. Specifically, he contends that his age, lack of criminal history, and the circumstances of his interrogation rendered his statements involuntary. The Defendant's interrogation lasted less than an hour with Officer Vader. While the Defendant had interactions with two other officers, both of these interactions were relatively short. Officer Guerra read the Defendant his *Miranda* warnings and was only with the Defendant for approximately 20 minutes. Officer Hernandez's interaction with the Defendant lasted only a few minutes and consisted of only two questions. Even assuming that Officer Hernandez discussed the potential sentence the Defendant may receive based on his arrest, actions taken by law enforcement during an interrogation such as reciting a potential sentence is not coercive conduct and does not render a suspect's subsequent statements involuntary. *United States v. Haswood*, 350 F.3d 1024, 1029 (9th Cir. 2003). Additionally, while Officer Vader told the Defendant to tell the truth, imploring a suspect to tell the truth similarly does not render a suspect's statements involuntary. *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 494 (9th Cir. 1997).

While the Defendant was only 19 years old at the time of his arrest, he had no physical or mental impairments, he was of sound mind, and he had held numerous jobs

- 5 -

evidencing a level of maturity. His interrogation was short and he was not denied access to a bathroom, food, water, or a telephone. Finally, the officers never made any threats or promises to the Defendant. After an independent review of the record, the Court finds that the government has met its burden of establishing by a preponderance of the evidence that Defendant's statements were voluntary and not the result of law enforcement coercion.

*Ineffective Miranda*

Defendant argues that since Officer Hernandez questioned the Defendant before he was read his *Miranda* warnings, his subsequent waiver of his *Miranda* rights was invalid. As a result, the Defendant's post-*Miranda* statement should be suppressed. It is undisputed that when Officer Hernandez initially questioned the Defendant, he had not been read his *Miranda* warnings. Magistrate Judge Bowman recommended that the Court suppress the statements made to Officer Hernandez since the Defendant was in custody at the time Officer Hernandez posed those questions. The government has not objected to this recommendation and it is adopted by the Court.

However, Magistrate Judge Bowman recommended denying Defendant's Motion to Suppress the Defendant's post-*Miranda* statement to Officer Vader because it was a voluntary statement given after a valid waiver of the Defendant's *Miranda* rights. Defendant argues that pursuant to *Missouri v. Seibert*, 542 U.S. 600 (2004), the fact that the Officers initially interrogated the Defendant without the benefit of *Miranda* warnings rendered his subsequent statements made after receiving *Miranda* warnings inadmissible.

When law enforcement elicits a statement from a suspect prior to issuing *Miranda* warnings, any subsequent statement received post-*Miranda* is admissible, unless law enforcement used coercive or improper tactics in eliciting the first statement or if the post-*Miranda* statement was involuntary. *Oregon v. Elstad*, 470 U.S. 298, 314, 318 (1985). Accordingly, pursuant to *Elstad*, "if the pre warning statement was voluntary (or if involuntary, the change in time and circumstances dissipated the taint), then the post warning confession is admissible unless it was involuntarily made despite the *Miranda*

warnings." *United States v. Williams*, 435 F.3d 1148, 1153 (9th Cir. 2006).

In *Seibert*, the United States Supreme Court held that a two-step interrogation technique in which law enforcement interrogates a suspect to extract a confession and then subsequently provides the suspect with his *Miranda* warnings and a repetition of the previously provided confession may yield inadmissible statements even in the absence of coercion. *United States v. Williams*, 435 F.3d 1148, 1154-1155 (9th Cir. 2006). Pursuant to *Seibert*, "when interrogators question first and warn later, the threshold inquiry is 'whether it would be reasonable to find that in these circumstances the warnings could function 'effectively' as *Miranda* requires.'" *United States v. Williams*, 435 F.3d 1148, 1154-1155 (9th Cir. 2006) *quoting Seibert*, 542 U.S. at 611-612.

Accordingly, when a "law enforcement officer interrogates a suspect in custody but does not warn the suspect of his *Miranda* rights until after he has made an inculpatory statement, the inquiry is whether the officer engaged in a deliberate two step interrogation." *United States v. Barnes*, 713 F.3d 1200, 1205 (9th Cir. 2013) *citing Williams*, 435 F.3d at 1150. "Such an interrogation occurs when an officer deliberately questions the suspect without *Miranda* warnings, obtains a confession or inculpatory admission, offers mid-stream warnings after the suspect has admitted involvement or guilt, and then has the suspect repeat his confession or elaborate on his earlier statements." *Id*.

According to the plurality in *Seibert*, a court must suppress a post *Miranda* statement obtained during a deliberate two-step interrogation where the midstream *Miranda* warning did not effectively appraise the suspect of his rights. *United States v. Williams*, 435 F.3d 1148, 1157 (9th Cir. 2006). As such, if law enforcement officers deliberately employed the two-step strategy, the next step is to "evaluate the effectiveness of the midstream *Miranda* warnings to determine whether the post warning statement is admissible." *United States v. Barnes*, 713 F.3d 1200, 1205 (9th Cir. 2013). However, if law enforcement officers did not deliberately utilize a two-step procedure to weaken *Miranda's* protections the voluntariness test in *Elstad* controls. *United States v. Williams*, 435 F.3d 1148, 1157-1158 (9th Cir. 2006).

In order to determine whether law enforcement deliberately employed the two-step interrogation tactic, the court should consider whether the objective evidence and any subjective evidence support the inference that the two step interrogation procedure was used to undermine the *Miranda* warnings. *United States v. Barnes*, 713 F.3d 1200, 1205 (9th Cir. 2013). The objective evidence should include the "timing, setting, and completeness of the pre warning interrogation, the continuity of police personnel and the overlapping content of the pre and post warning statements." *United States v. Williams*, 435 F.3d 1148, 1158 (9th Cir. 2006).

Officer Hernandez testified that he asked the Defendant two questions, specifically, if he knew his conduct was illegal and how much he was going to be paid for smuggling the child across the border. According to Officer Hernandez his reasoning for asking the Defendant these two questions was to determine whether the officers had a valid alien smuggling case and whether it should proceed as a criminal investigation.

Officer Hernandez's questioning of the Defendant were likely and intended to elicit an incriminating response. At the time Officer Hernandez questioned the Defendant, he was handcuffed and in custody. The Ninth Circuit Court of Appeals has noted that once a law enforcement officer has detained a suspect and questions him, there is rarely, if ever a legitimate reason to delay giving a *Miranda* warning until after the suspect has made an incriminating statement and the most plausible reason for the delay is to weaken the subsequent *Miranda* warning's effectiveness. *United States v. Williams*, 435 F.3d 1148, 1159 (9th Cir. 2006). "By any objective measure … it is likely that if the interrogators employ the technique of withholding warnings until after interrogation succeeds in eliciting a confession, the warnings will be ineffective in preparing the suspect for successive interrogation, close in time and similar in content." *Id*.

The questioning by Officer Hernandez while brief was similar in content to the subsequent questioning by Officer Vader. Additionally, these two lines of questioning were very close in time. As such, after an evaluation of the subjective and objective evidence and a review of the relevant case law, the Court finds that the officers deliberately utilized the two-step interrogation procedure.

However, this does not end the Court's inquiry.  After determining that an interrogator deliberately used the two-step strategy, "the Court must determine, based on objective evidence, whether the midstream warning adequately and effectively apprised the suspect that he had a genuine choice whether to follow up on his earlier admission" *United States v. Williams*, 435 F.3d 1148, 1160 (9th Cir. 2006) *citing Seibert*, 542 U.S. at 615-616.  In doing so, the Court must address,

> (1) the completeness and detail of the pre warning interrogation, (2) the overlapping content of the two rounds of interrogation, (3) the timing and circumstances of both interrogations, (4) the continuity of police personnel, (5) the extent to which the interrogator's questions treated the second round of interrogation as continuous with the first, and (6) whether any curative measures were taken.

*United States v. Williams*, 435 F.3d 1148, 1160 (9th Cir. 2006) *citing Seibert*, 542 U.S. at 615.  Officer Hernandez's initial questioning was brief and far from complete.  Officer Hernandez only asked the Defendant two questions.  In contrast, the post warning statement consisted of dozens of questions related to the Defendant's conduct.  While the two questions posed by Officer Hernandez were repeated by Officer Vader, the two interrogations differed significantly in that the post warning statement elicited significantly more information than the two questions asked by Officer Hernandez.

Further, while there was no significant break in time between the two lines of questioning, after Officer Hernandez asked his two questions, the Defendant was moved to another location.  The Defendant was then read *Miranda* warnings by Officer Guerra in Spanish and given an opportunity to read the warnings to himself.  After admitting he understood the warnings, the Defendant signed the *Miranda* form and Officer Guerra left the room.  Officer Vader then confirmed that the Defendant had read and understood his *Miranda* warnings and asked him if he wanted to answer questions prior to beginning his interrogation.  Officer Hernandez was not present when the Defendant was read *Miranda* warnings or interrogated by Office Vader.  Further, Officer Vader's interrogation was significantly broader and there is no evidence to support the notion that it was treated as

continuous of Officer Hernandez's questioning.[3]  As such, based upon a review of the objective evidence, the Court finds that the midstream *Miranda* warnings adequately and effectively apprised the Defendant that he had a genuine choice as to whether to answer questions during his post-*Miranda* interrogation.

Accordingly, IT IS ORDERED:

1. The Report and Recommendation (Doc. 56) is ADOPTED.

2. Defendant's Motions to Suppress (Doc. 37, 45) are DENIED.

Dated this 13th day of October, 2013.

*Cindy K. Jorgenson*
United States District Judge

---

[3] In fact, the Defendant denied ever stating to Officer Hernandez that he was being compensated to bring the child across the border. Assuming the Defendant never made the incriminating statement to Officer Hernandez, there is no concern that the officers gave Defendant *Miranda* warnings and then had him repeat his earlier admissions. *See Bobby v. Dixon*, 132 S.Ct. 26, 31 (2011).

- 10 -